Fernando RODRIGUEZ *v.* STATE of Arkansas

CR 07-738                              276 S.W.3d 208

Supreme Court of Arkansas
Opinion delivered February 14, 2008

*Keith, Miller, Butler, & Webb, PLLC,* by: *Billy Bob Webb,* for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Fernando Rodriguez appeals the order of the Benton County Circuit Court convicting him of first-degree murder. On appeal, Rodriguez argues that the circuit court erred in admitting the out-of-court statement of a witness as an excited utterance. Within this argument, Rodriguez also argues that the admission of the statement resulted in a violation of his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Rodriguez also argues that the circuit court erred in denying his motion to stay proceedings so that he could obtain a jury of his peers. As Rodriguez was sentenced to a term of life imprisonment, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

Rodriguez does not challenge the sufficiency of the evidence against him, therefore, only a brief recitation of the facts is necessary. On July 16, 2005, Rodriguez was attending a baby shower at the home of his parents, Adolfo and Maria Rodriguez, in Springdale, Arkansas. Also gathered at the home were numerous family members, including Gavino Mendoza, Rodriguez's brother-in-law.[1] While several witnesses testified that Rodriguez and Mendoza were initially on good terms, these same witnesses later described a physical altercation that developed between the two. It was subsequently discovered that Mendoza had been stabbed, and he died as a result of his wounds.

On August 3, 2005, Rodriguez was charged by felony information with one count of murder in the first degree, a violation of Ark. Code Ann. § 5-10-102 (Repl. 1997). A jury trial was held on November 28, 2006. The jury convicted Rodriguez and sentenced him as previously set forth. This appeal followed.

### Excited Utterance

As his first point on appeal, Rodriguez argues that the circuit court erred in admitting the out-of-court statement of Linda Mendoza, the seven-year-old daughter of the victim, under the excited-utterance exception to the hearsay rule. According to

---

[1] Rodriguez commonly referred to Mendoza as his brother-in-law, but in reality Mendoza and Rodriguez's sister never married, but did live together as husband and wife.

Rodriguez, the statement was taken some forty hours after the incident between him and Mendoza and lacked reliability. Rodriguez also argues that it was error to admit the statement, as the circuit court erroneously determined that the availability of the witness was irrelevant. The State counters that the circuit court did not abuse its discretion in ruling the statement to be admissible as an excited utterance. Alternatively, the State avers that any error resulting from the admission of the statement would have been harmless in light of the overwhelming evidence of Rodriguez's guilt.

The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Morris v. State*, 358 Ark. 455, 193 S.W.3d 243 (2004); *Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002). Moreover, we will not reverse absent a showing of prejudice. *Id.*

Arkansas Rule of Evidence 803(2) provides in relevant part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

In analyzing Rule 803(2), this court has recognized that there are several factors to consider when determining if a statement falls under this exception: the lapse of time, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. *Davis v. State*, 362 Ark. 34, 207 S.W.3d 474 (2005); *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2002); *Moore v. State*, 317 Ark. 630, 882 S.W.2d 667 (1994) (adopting these factors from the Eighth Circuit's decision in *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980)). For the exception to apply, there must be an event which excites the declarant. *Flores*, 348 Ark. 28, 69 S.W.3d 864. In addition, "[i]n order to find that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation." *Peterson v. State*, 349 Ark.

195, 199, 76 S.W.3d 845, 847 (2002) (quoting *Fudge v. State*, 341 Ark. 759, 769, 20 S.W.3d 315, 320 (2000) (quoting *Iron Shell*, 633 F.2d at 85-86)). The statements must be uttered during the period of excitement and must express the declarant's reaction to the event. *Moore*, 317 Ark. 630, 882 S.W.2d 667. It is for the circuit court to determine whether the statement was made under the stress of excitement. *Greenlee v. State*, 318 Ark. 191, 884 S.W.2d 947 (1994).

In the present case, after considering applicable case law and the arguments of counsel, as well as reviewing the taped statement, the circuit court ruled:

> that the State has met its burden and demonstrated that this statement does in fact get to come in under the hearsay exceptions, availability of the witness is not material. I also thought it significant the nature of the ordeal, that is a battle so to speak between people that she loved. This wasn't a stranger. This was her dad and her uncle, and she doesn't even — I think that's further stress on the little girl. In any event, I have now determined that it will be admitted.

Rodriguez claims that this ruling was in error and an abuse of discretion because (1) the statement was taken some forty hours after the startling event occurred; (2) it was made to police and in response to an inquiry by Lt. Don Batchelder; (3) there was no testimony that the child was agitated, excited, spontaneous or impulsive, but rather she was calm during the statement; and (4) the statement contained inconsistencies.

We agree with Rodriguez that it was error and an abuse of discretion for the circuit court to admit the statement as an excited utterance. Our review of applicable case law and the record in this case leaves us with the firm belief that the statement was not an excited utterance. Specifically, the passage of almost two days between the incident and the statement, coupled with Linda's calm demeanor in response to Lt. Batchelder's questions, simply does not satisfy the excited utterance requirements of Rule 803(2).

■ Although the circuit court erred in admitting the statement, we agree with the State that this was harmless error. This court has said that even when a circuit court errs in admitting evidence, we will affirm the conviction and deem the error harmless if there is overwhelming evidence of guilt and the error is

slight. *Eastin v. State*, 370 Ark. 10, 257 S.W.3d 58 (2007). To determine if the error is slight, we look to see whether the defendant was prejudiced by the erroneously admitted evidence. *Id.* Prejudice is not presumed, and this court will not reverse a conviction absent a showing of prejudice by the defendant. *Id.* When the erroneously admitted evidence is merely cumulative, there is no prejudice, and a conviction will not be reversed for harmless error in the admission of evidence. *Id.*

In the present case, there was overwhelming evidence of guilt presented by the State. For example, multiple witnesses testified as to the extent and bloodiness of the altercation between Rodriguez and Mendoza, including two of Rodriguez's brothers. Raul Rodriguez testified that he did not see a weapon, but saw Rodriguez holding something behind his back. The State also introduced a 911 call during which Raul stated that Mendoza had been stabbed. Another brother, Adolfo Rodriguez, testified that he saw something in Rodriguez's hand like "a knife, a pocket knife, [or] a screwdriver." Finally, Bradley Faught testified that during a conversation in the Benton County jail, Rodriguez had told Faught about the fight with Mendoza and that he had gone "in the kitchen and got a knife and stabbed him."[2] Under these facts, Linda's statement was merely cumulative, and the admission of the statement was harmless error.

Next, we turn to Rodriguez's claim that admission of the statement resulted in a violation of his rights under the Confrontation Clause. Specifically, he asserts that the State was required to demonstrate that Linda was unavailable, and that the circuit court erred in concluding that availability was immaterial. He further argues that the Confrontation Clause requires that the statement have some indicia of reliability, and the inconsistencies of Linda's statement make it suspect. In response, the State argues that Rodriguez's argument is not preserved for appeal because he did not develop his constitutional argument below or receive a ruling.

Prior to addressing Rodriguez's argument, it is necessary to address the State's preservation argument. In the present case, the following dialogue took place following the circuit court's ruling that the statement was admissible:

---

[2] Faught was incarcerated in the Benton County jail with Rodriguez while on hold for federal charges.

[DEFENSE COUNSEL]: Judge, I do have one more, and I don't know how it is going to play out. But I would make a violation of confrontation clause as far as both the United States Constitution and the state Constitution. I recognize that she is here, and if the State calls her, then that will obviously take care of that. If the State doesn't call her, I will try to call her, and we can see if we can go about it that way.

THE COURT: Okay.

[THE STATE]: Your Honor, if I may for purposes of the record reflect that the defense has had the opportunity to meet with the little girl. In fact, it's my understanding that they went to her house and this witness has been available to the defense and in fact continuing to cooperate and work with the defense.

[DEFENSE COUNSEL]: Sure, Judge, I agree with that. My — my — my objection would be if she gets up on that stand and freezes, that's when my objection comes up.

THE COURT: I'm glad everybody has been cooperating, but what we're worried about is what happens in here in front of this jury.

Then, when the statement was introduced, the circuit court noted that it was admitted without waiving any previous objections. That is the extent of the conversation regarding Rodriguez's objection to the statement based upon the Confrontation Clause.

██ It is well settled that an issue must be raised to the circuit court to be preserved for appellate review. *Eastin*, 370 Ark. 10, 257 S.W.3d 58. Even though Rodriguez's argument regarding the Confrontation Clause was raised below, his argument was never developed before the circuit court, and he failed to obtain a specific ruling on the issue. Accordingly, it is not preserved for our review.

### Jury Pool

Rodriguez's second argument for reversal is that the circuit court erred in denying his motion to continue or stay the proceed-

ings so that he could obtain a jury of his peers. Specifically, he claims that a constitutional jury cannot be obtained unless its source, the jury list, is representative of a cross-section of the community from which it is drawn. Rodriguez concludes that he was denied his opportunity to prove the deliberate and systematic exclusion of Hispanic and Latino persons from the jury lists of the Nineteenth West Judicial District.

We review the grant or denial of a motion for continuance or stay under an abuse-of-discretion standard. *Stenhouse v. State*, 362 Ark. 480, 209 S.W.3d 352 (2005). An appellant must not only demonstrate that the circuit court abused its discretion by denying the motion but also must show prejudice that amounts to a denial of justice. *Id.* Moreover, in considering whether the court's discretion has been abused in a particular case, the circumstances of the case must be examined with emphasis on the reasons presented to the judge at the time. *Stephens v. State*, 277 Ark. 113, 640 S.W.2d 94 (1982).

We have repeatedly held that selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial. *Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007); *Thomas v. State*, 370 Ark. 70, 257 S.W.3d 92 (2007). A criminal defendant is entitled to require that the State not deliberately or systematically deny to members of his race the right to participate as jurors. *Navarro*, 371 Ark. 179, 264 S.W.3d 530. The defendant, however, bears the burden of proving systematic exclusion. *Id.* Once the defendant makes a prima facie showing of racial discrimination in the jury-selection process, the burden shifts to the State to justify its procedure. *Id.* In order to establish a prima facie case of deliberate or systematic exclusion, a defendant must prove that: (1) the group alleged to be excluded is a "distinctive" group in the community, (2) the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Id.*; *Thomas*, 370 Ark. 70, 257 S.W.3d 92. *See also Duren v. Missouri*, 439 U.S. 357 (1979).

In the present case, Rodriguez claims that he was denied the opportunity to prove the deliberate and systematic exclusion of Hispanics and Latinos from the jury pool. However,

a review of the record reveals that the basis for his motion below was his opinion that there did not appear to be any Hispanic surnames on the jury list from which he concluded that the manner of selecting a jury from the registered voter list is unconstitutional as it pertains to him. These claims do not reach the level necessary for us to conclude that Rodriguez met his burden of establishing a prima facie case of deliberate or systematic exclusion of Hispanic and Latino jurors. *See Navarro,* 371 Ark. 179, 264 S.W.3d 530 (holding that, even though Hispanics make up a distinctive group in the community, the appellant failed to establish proof of systematic exclusion across the venire and had no real proof that systematic exclusion was inherent in the system). Moreover, the circuit court noted that it had conducted numerous trials throughout the year, and that it recalled having had Hispanic jurors in virtually every case. Accordingly, the circuit court did not abuse its discretion in denying Rodriguez's motion.

### 4-3(h) Review

Pursuant to Ark. Sup. Ct. R. 4-3(h), the record in this case has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to Rodriguez, and no prejudicial error has been found.

Affirmed.